**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| G&G CLOSED CIRCUIT EVENTS, LLC, AS BROADCAST LICENSEE OF THE APRIL 22, 2023 GERVONTA DAVIS V. RYAN GARCIA CHAMPIONSHIP FIGHT PROGRAM; *Plaintiff* | § | Case No. SA-26-CV-02624-XR |
| v. | § | |
| JAMES I. FLORES, INDIVIDUALLY; *Defendant* | § | |

**ORDER GRANTING MOTION FOR DEFAULT**

On this date, the Court considered Plaintiff G&G Closed Circuit Events, LLC's motion for default judgment against Defendant James I. Flores, Individually, and d/b/a Tha Southside Spot, (ECF No. 10). After careful consideration, the Court **GRANTS** the motion.

**BACKGROUND**

Plaintiff held exclusive commercial distribution rights to the broadcast of the Gervonta Davis v. Ryan Garcia Championship Fight Program telecast (the "Event") nationwide on April 22, 2023. ECF No. 1 ¶ 6; ECF No. 10-1, Ex. A (Aff. of Thomas P. Riley) ¶ 2. The Event broadcast originated via satellite and was electronically coded or "scrambled" before being retransmitted to cable systems and satellite television companies via satellite signal. ECF No. 1 ¶ 9.

Plaintiff entered into agreements with various commercial establishments in Texas that allowed them, for a fee, to exhibit the Event to their patrons. *Id.* ¶ 11. The sublicense fee for the Event was based on the capacity of the establishment. For example, a commercial establishment in Texas with a maximum fire code occupancy up to 100 persons would pay a $1,740.50 sublicense fee for the Event. ECF No. 10-1, Ex. A, Riley Aff. ¶ 6; Ex. A-3 (Rate Card).

In order to safeguard against the unauthorized interception or receipt of the Event, the interstate satellite transmission of the Event was electronically coded or scrambled and was not available to or intended for the use of the general public. ECF No. 10-1, Ex. A, Riley Aff. ¶ 9. If a commercial establishment was authorized by Plaintiff to receive the respective Event, the establishment was provided with the electronic decoding equipment and the satellite coordinates necessary to receive the signal or the establishment's cable or satellite provider would be notified to unscramble the reception, depending upon the establishment's equipment and provider. *Id.*

On the day of the Event, Tha Southside Spot (the "Establishment"), a commercial establishment located at 5162 Roosevelt Ave., in San Antonio, Texas, advertised the Event on its official Facebook page in two separate posts. *See* ECF No. 10-1, Ex. D at 1 ("[T]he Fight is only $5."); *id.* at 2 ("[L]ater on they will show the fight for a $5 fee.").

On the night of the Event, Sylvia Medina, an auditor working on Plaintiff's behalf, entered the Establishment. ECF No. 10-1, Ex. A-2 ("Medina Aff.") at 1. According to Medina, the Establishment was charging a cover charge of $5.00 to enter the establishment and to watch the Event, which was being telecast on a 32" television inside the main retail building of the establishment and a 96" projector outside on the main parking lot for the retail store. *Id.* During the Event, Medina counted three separate times of approximately 18, 15, and 15 people inside of the Establishment, which she estimated had a capacity of approximately fifty people. *Id.* at 2.

On the same night of the Event, a second auditor, Victor Ricondo, working on Plaintiff's behalf, entered the Establishment. ECF No. 10-1, Ex. A-2 ("Ricondo Aff.") at 1. According to Ricondo, he paid a cover charge of $10.00 for two people. Ricondo noted a large projected screen in the center of the Establishment and observed another program, Morrell Jr. v. Falcao. *Id.* During

the program, Ricondo counted three separate times of approximately 26 inside the Establishment, which he estimated had a capacity of approximately 26 people. *Id.* at 2.

Plaintiff filed this case on April 21, 2026, seeking monetary relief up to $110,000 pursuant to 47 U.S.C. § 605, or, alternatively, up to $60,000 pursuant to 47 U.S.C. § 553. ECF No. 1 at 4. Plaintiff named as Defendant, James I. Flore, individual, and d/b/a Tha Southside Spot, who holds a permit issued by the Texas Alcoholic Beverage Commission for the Establishment, owner and/or manager of the Establishment, who supervised the business activities of the Establishment, and had a financial interest in its business operations. *Id.* ¶ 3.

The Complaint alleges that Defendant failed to contract with or pay a fee to Plaintiff to obtain a proper license or authorization to show the Event at the Establishment. *Id.* at 4. Instead, Plaintiff asserts that Defendant willfully intercepted or received the interstate communication of the Event—or assisted in such actions—and then unlawfully transmitted, divulged, and published said communication—or assisted in unlawfully transmitting, divulging, and publishing said communication. *Id.* at 3. Defendant then showed the Event to patrons of the Establishment without authorization, license, or permission. *Id.* The Complaint alleges that Defendant pirated Plaintiff's licensed exhibition of the Event and infringed upon Plaintiff's exclusive rights while avoiding proper authorization and payment, and that Defendant acted willfully and with the purpose and intent to secure a commercial advantage and private financial gain. *Id.* at 3, 4.

Defendant failed to timely answer or otherwise appear in this action, and the Clerk of Court entered default against him on September 24, 2026. ECF No. 11. To date, Defendant has not filed an answer or any other responsive pleading with the Court, nor has he made an appearance in this case. On September 24, 2026, Plaintiff filed a motion for default judgment, which the Court now considers. ECF No. 10.

## DISCUSSION

### I. Legal Standard

Pursuant to Rule 55(a), a default judgment is proper "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." FED. R. CIV. P. 55(a). After a default has been entered and the defendant fails to appear or move to set aside the default, the court may, on the plaintiff's motion, enter a default judgment. FED. R. CIV. P. 55(b)(2). However, in considering any motion for default judgment, a court must examine jurisdiction, liability, and damages. *Rabin v. McClain*, 881 F. Supp. 2d 758, 763 (W.D. Tex. 2012). The Court examines each in turn.

### II. Analysis

#### A. Jurisdiction

"[W]hen entry of default is sought against a party who has failed to plead or otherwise defend, the district court has an affirmative duty to look into jurisdiction both over the subject matter and the parties." *Sys. Pipe & Supply, Inc. v. M/V Viktor Turnakovskiy*, 242 F.3d 322, 324 (5th Cir. 2001).

A federal court has subject matter jurisdiction over civil cases "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Such federal-question jurisdiction extends to cases in which a "well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 808 (1988). Here, Plaintiff's action was brought in federal court, asserting "Anti-Piracy" claims involving the Federal Communications Act of 1934 (the "Act"), pursuant to 47 U.S.C. §§ 553 and

605. Thus, Plaintiff asserts claims involving a federal question, allowing this Court to exercise federal question subject-matter jurisdiction over this case pursuant to 28 U.S.C. § 1331.

This Court also has personal jurisdiction over the parties to this case, as Plaintiff has properly effected service of process on Defendant in accordance with Texas law. "[S]ervice of process . . . initiates a defendant's obligations in a civil suit[.]" *Jefferson v. Delgado Cmty. Coll. Charity Sch. of Nursing*, 602 F. App'x 595, 598 (5th Cir. 2015) (per curiam). Absent proper service of process, a court lacks personal jurisdiction over a defendant, and any default judgment against the defendant would be void. *Rogers v. Hartford Life & Accident Ins. Co.*, 167 F.3d 933, 940 (5th Cir. 1999). Pursuant to the Federal Rules of Civil Procedure, the plaintiff bears the burden of ensuring that the defendant is properly served with a copy of the summons and the complaint within ninety days of filing the complaint. *See* FED. R. CIV. P. 4(c)(1), (m).

The affidavit of service indicates that Defendant was timely and personally served with process on July 8, 2026. *See* ECF No. 6 at 2; FED. R. CIV. P. 4(h)(1)(B).

**B. Liability**

"The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established." *Jackson v. FIE Corp.*, 302 F.3d 515, 524 (5th Cir. 2002) (quoting *Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). Although the Court must accept the plaintiff's well-pleaded facts as true, a defendant's default does not warrant the entry of default judgment before the Court finds a "sufficient basis in the pleadings for the judgment entered." *Nishimatsu Constr.*, 515 F.2d at 1206 ("The defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law."); *see also* 10A Wright & Miller *et al.*, FED. PRAC. & PROC. CIV. § 2688 (3d ed. 2002) ("Even after default, however, it remains for the court to consider

whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law.").

Thus, prior to a default judgment for damages, "the district court must ensure that the well-pleaded allegations in the complaint, which are taken as true due to the default, actually state a substantive cause of action and that there is a substantive, sufficient basis in the pleadings for the particular relief sought." *Tyco Fire & Sec., LLC v. Alcocer*, 218 F. App'x 860, 863 (11th Cir. 2007). In determining whether the pleadings present a sufficient basis for Plaintiff's claim for relief, "the Fifth Circuit has looked to the Rule 8 case law for guidance[.]" *J&J Sports Prods., Inc. v. Morelia Mexican Rest., Inc.*, 126 F. Supp. 3d 809, 815 (N.D. Tex. 2015).

## I. Analysis

### A. Liability of Defendant Flores Under 47 U.S.C. § 605

The Act prohibits the "[u]nauthorized interception or receipt or assistance in intercepting or receiving [cable] service" communications. 47 U.S.C. § 553(a). "Cable service" is defined as a "one-way transmission to subscribers of (i) video programming, or (ii) other programming service," and any necessary interactions allowing subscribers access to such service. 47 U.S.C. § 522(6). The Fifth Circuit, as a matter of first impression in *J&J Sports Prods., Inc. v. Mandell Family Ventures, L.L.C.*, joined the majority of circuits in holding the proscriptions of § 553 apply to interceptions or receipts of wire communications, and § 605 applies when radio communications are received or intercepted. 751 F.3d 346, 352 (5th Cir. 2014).

Plaintiff's Complaint seeks damages under § 605 or, alternatively under § 553. However, it expressly states that "[t]he transmission of the Event originated via satellite." ECF No. 1 ¶ 9. Although it is unclear from Plaintiff's Complaint whether Defendant used internet, cable, or satellite to exhibit the Program, it is plausible—and even likely, given that the Establishment was

equipped with a satellite dish, *see* ECF No. 10-1, Ex. A-2 (photos)—that Defendant received the Program via satellite. "And when 'there are two permissible views of the evidence, the fact-finder's choice between them cannot be clearly erroneous.'" *J & J Sports Prods., Inc. v. Enola Invs., L.L.C.*, 795 F. App'x 313, 315 (5th Cir. 2020) (quoting *Justiss Oil Co. v. Kerr-McGee Ref. Corp.*, 75 F.3d 1057, 1062 (5th Cir. 1996)). Thus, the Court will assess liability and damages based on violations alleged under § 605, "as the statute 'does not require identification of the precise means used to accomplish the piracy of a satellite signal.'" *Id.* at 315 (quoting *J&J Sports Prods., Inc. v. Brady*, 672 F. App'x 798, 802–03 (10th Cir. 2016)).

The Act prohibits unauthorized interception or receipt and subsequent dissemination of radio communications so intercepted or received. *See* 47 U.S.C. § 605 (prohibiting not only unauthorized interception or receipt of radio communications but also "[u]nauthorized publication or use of communications" so acquired). Other than securing proper authorization, another exception exists. The prohibition on intercepting/receiving and disseminating (or assistance in so doing) radio communications does not apply if (1) the communications are not encrypted, and (2) a marketing system does not exist allowing individuals the opportunity to obtain authorized access. *See id.* § 605(b). Plaintiff's Complaint alleges that Defendant violated § 605 of the Act "willfully and with the express purpose and intent to secure a commercial advantage and private financial gain." ECF No. 1 ¶ 13.

The Act is a strict liability statute. To establish Defendant's liability, Plaintiff must establish by a preponderance of the evidence that (1) the Event was disseminated without authorization in Defendant's Establishment; and (2) the exception to § 605 does not apply—i.e., that the Event was encrypted, and was available for Defendant's access by authorized means. Any willfulness of Defendant's conduct is relevant only to the issue of damages.

Plaintiff had the exclusive rights to exhibit the Event and to sublicense it through an agreement to commercial establishments. *Id.* ¶¶ 6–8. Plaintiff alleges that "[t]he transmission of the Event originated via satellite and was electronically coded or 'scrambled.'" *Id.* ¶ 9. Only commercial establishments that contracted with Plaintiff to broadcast the Event were provided with the electronic decoding capability and/or satellite coordinates necessary to receive the signal of the Event. *Id.* ¶ 11. According to Plaintiff's Complaint, Defendant failed to contract with Plaintiff or any of its agents to obtain the rights to broadcast the Event. *Id.* ¶ 10. Nonetheless, Defendant misappropriated Plaintiff's licensed exhibition of the Event and infringed upon Plaintiff's exclusive rights by intercepting the Event and broadcasting it to patrons of the Establishment while avoiding proper payment to Plaintiff. *Id.* ¶¶ 12–16.

Based on the undisputed facts, Plaintiff has established by a preponderance of the evidence that the Event was disseminated at the Establishment without Plaintiff's authorization. The undisputed evidence also indicates that the exception to § 605 does not apply because the Event was encrypted and was available for Defendant's access by authorized means. *See id.* ¶¶ 9–11; ECF No. 10-1, Ex. A, Riley Aff. ¶ 5 (describing encryption and descrambling process); *id.*, Ex. A-3 (Rate Card). Accordingly, the Court concludes that Plaintiff has demonstrated that Defendant violated the Communications Act by a preponderance of the evidence.

**B. Whether Default Judgment is Warranted**

"A party is not entitled to a default judgment as a matter of right, even where the defendant is technically in default." *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996). Instead, the district court "has the discretion to decline to enter a default judgment." *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998). In deciding whether to exercise its discretion to enter default judgment, the Court considers:

> (1) whether material issues of fact exist; (2) whether there has been substantial prejudice; (3) whether the grounds for default are clearly established; (4) whether the default was caused by a good faith mistake or excusable neglect; (5) the harshness of a default judgment; and (6) whether the court would think itself obliged to set aside the default on the defendant's motion.

*Lindsey*, 161 F.3d at 893.

To begin, taking all factual allegations in the complaint as true, the Court concludes that Plaintiff's allegations state a claim upon which relief can be granted, and default judgment is appropriate.

As a result, the Court concludes that the first *Lindsey* factor supports default judgment. Defendant has filed no responsive pleadings and is deemed to have admitted to the facts alleged in the counterclaim. Thus, there are no material issues in dispute. *Lindsey*, 161 F.3d at 893.

Second, Defendant's failure to answer effectively prejudices Plaintiff as it brings the legal process to a halt, causing substantial prejudice to Plaintiff. *Id.*

Third, the grounds for default are "clearly established" since, throughout this case, Defendant has not responded to the complaint or Plaintiff's motion. *See J.D. Holdings, LLC v. BD Ventures, LLC*, 766 F. Supp. 2d 109, 113 (D.D.C. 2011) (explaining that default judgment is appropriate where the defendants are unresponsive and the failure to respond is willful, as reflected by the parties' failure to respond to the complaint or the motion for default judgment).

Fourth, there is no evidence before the Court suggesting that Defendant's silence is the result of a "good faith mistake or excusable neglect." *Lindsey*, 161 F.3d at 893.

Fifth, Defendant has had over four months to respond to Plaintiff's complaint or otherwise appear in this matter. Any purported harshness of a default judgment is mitigated by Defendant's inaction for this time period. *United States v. Rod Riordan Inc.*, No. MO:17-CV-071-DC, 2018 WL 2392559, at *3 (W.D. Tex. May 25, 2018).

Finally, the Court is not aware of any facts that give rise to "good cause" to set aside the default if challenged by Defendant. *Lindsey*, 161 F.3d at 893. Therefore, the Court finds that it is appropriate to exercise its discretion to grant default judgment.

**C. Damages**

Section 605 contains two damage provisions relevant to this case. First, statutory damages are prescribed "for each violation of subsection (a) of this section involved in the action in a sum of not less than $1,000 or more than $10,000, as the court considers just[.]" 47 U.S.C. § 605(e)(3)(C)(i)(II). Second, if violations were "committed willfully and for purposes of direct or indirect commercial advantage or private financial gain," the Court may increase damages "whether actual or statutory, by an amount of not more than $100,000 for each violation of subsection (a) of this section." 47 U.S.C. § 605(e)(3)(C)(ii).

**1. Statutory Damages Under Section 605(e)(3)(C)(i)(II)**

Plaintiff seeks $10,000 in statutory damages premised on lost licensing fees, and compensation for being deprived of the value, benefits, and profits that may have been realized, but for Defendant's piracy of the Event. ECF No. 10 ¶ 11. As Plaintiff notes in its briefing, lost licensing fees are a mere baseline in assessing statutory damages. *Id.* at 3 n.3; *see Entm't by J & J, Inc. v. Al-Waha Enters., Inc.*, 219 F. Supp. 2d 769, 776 (S.D. Tex. 2002) (explaining how damages of mere broadcast cost would not incentivize statute compliance). This Court has previously assessed damages by looking to the number of patrons present during the unauthorized broadcast. *See J&J Sports Prods., Inc. v. Tejada*, No. 5-13-CV-01020-XR, 2014 WL 869218, at *2 (W.D. Tex. Mar. 4, 2014) (assessing baseline statutory damages using number of patrons established by affidavit). This "per-patron" approach is not uncommon in previous § 605 cases.

*See, e.g.*, *Al-Waha Enters.*, 219 F. Supp. 2d at 776 (stating "the per-patron approach is an appropriate starting point for calculating damages").

Here, Plaintiff submitted the affidavit of Sylvia Medina, an auditor who was present at the Establishment on the date of the Event, which states there were approximately fifteen to eighteen patrons present and viewing the Event on a large screen. ECF No. 10-1, Ex. A-2, Medina Aff. at 2. Medina further observed that the capacity of the Establishment was approximately fifty people. *Id.* Plaintiff also submitted the affidavit of Victor Ricondo, an auditor who was present at the Establishment on the date of the Event, which states there were approximately twenty-six patrons present. ECF No. 10-1, Ex. A-2, Ricondo Aff. at 2. Ricondo further observed that the capacity of the Establishment was approximately fifty people. According to the submitted "Rate Card" (used to calculate sub-licensing fees based on venue capacity), a commercial establishment with a venue range of 1–100 people would be charged $1,740.50 for the legal right to broadcast the Event in Texas. ECF No. 10-1, Ex. A-3.

**2. Statutory Damages Under Section 605(e)(3)(C)(ii)**

The Supreme Court has defined "willful" in the context of civil statutes as conduct showing "disregard for the governing statute and an indifference to its requirements," *Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 127 (1985), and courts have interpreted the Communications Act consistently with that definition. *See, e.g.*, *ON/TV of Chicago v. Julien,* 763 F.2d 839, 844 (7th Cir. 1985) (interpreting "willfulness" under § 605 as defined in *Trans World Airlines*).

For purposes of § 605, courts have found conduct "willful" where there were repeated violations over a period of time, or where there was a sophisticated knowledge of the satellite programming industry and violation of the statutes which regulate it. *See, e.g.*, *Cable/Home*

*Communication Corp. v. Network Prods. Inc.*, 902 F.2d 829, 851 (11th Cir. 1990); *Home Box Office v. Champs of New Haven, Inc.*, 837 F. Supp. 480, 484 (D. Conn. 1993).

By his default, Defendant has admitted an intentional exhibition of the Event for financial gain. The Court finds damages for a willful violation in the amount of $10,000 appropriate based on the Establishment's approximate fifteen to twenty-six patrons on the night of the Event, the advertisement of the Event the broadcast of the Event in an urban area, and any revenue derived from the cover charge and the sale of food and beverages. *J&J Sports Prods., Inc. v. River Park Sports Bar*, No. Civ. A. H-15-2638, 2016 WL 6398491, at *9 (S.D. Tex. Oct. 28, 2016) (describing factors courts consider in determining whether additional damages are appropriate under 47 U.S.C. § 553(c)(3)(B)).

**D. Recovery of Costs and Attorney's Fees**

The Act mandates a prevailing plaintiff be awarded costs and attorney's fees. *See* 47 U.S.C. § 605(e)(3)(B)(iii). Plaintiff submitted an affidavit from its counsel, explaining his fees and seeking a 1/3 contingent fee. Though this Court has previously awarded attorney's fees based on the lodestar method, *see Tejada*, 2014 WL 869218, at *2, a review of the case law indicates that a 1/3 contingent fee is appropriate and reasonable in a case such as this one. *J & J Sports Prods., Inc. v. Casita Guanajuato, Inc.*, No. A-13-CA-824-SS, 2014 WL 1092177, at *3 (W.D. Tex. Mar. 19, 2014). Accordingly, the Court awards $3,913.50 in attorney's fees. The Court declines to award attorney's fees for potential post-trial and appellate services.

**CONCLUSION**

Accordingly, Plaintiff's motion for default judgment (ECF No. 10) is **GRANTED** as to Defendant James I. Flores. Plaintiff is awarded $11,740.50 in damages and $3,913.50 in attorneys' fees. A separate judgment in favor of Plaintiff shall issue in accordance with Rule 58.

Plaintiff is awarded costs and shall file a bill of costs in the form required by the Clerk of the Court, with supporting documentation, within fourteen days of the entry of the Judgment. *See* Local Rule 54.

It is so **ORDERED**.

**SIGNED** this 14th day of November, 2026.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE